## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARK W. M.,** [1]

          **Plaintiff,**

**v.**

**COMMISSIONER of SOCIAL SECURITY,**

          **Defendant.**

**Case No. 20-CV-00478-SPM**

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.[2]

### PROCEDURAL HISTORY

Plaintiff applied for both SSI and DIB in January 2017, alleging disability beginning on January 1, 2015. After holding an evidentiary hearing, the ALJ denied the application on April 2, 2019 (Tr. 15-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1). Administrative

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes and regulations are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1.    The ALJ erred in failing to identify the evidentiary basis of her assessment of Plaintiff's residual functional capacity (RFC).

2.    The ALJ erred by failing to build a logical bridge between the evidence presented and his decision to give significant weight to medical opinions and no special weight to others.

3.    The ALJ erred in failing to properly assess Plaintiff's subjective allegations, including his daily activities.

## APPLICABLE LEGAL STANDARDS

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the

plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and

cases cited therein.

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He found that Plaintiff worked after the alleged disability onset date, but determined that Plaintiff had not worked at the level of substantial gainful activity. The ALJ found that Plaintiff had severe impairments of chronic obstructive pulmonary disease (COPD), temporomandibular joint dysfunction (TMJ), cervical degenerative disc disease, diabetes mellitus with polyneuropathy, obstructive sleep apnea, fatty liver, and trigeminal neuralgia.

It appears that the ALJ's primary concern was with the severity of the problems Plaintiff described, not their existence. The ALJ reasoned that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not fully consistent with the medical evidence and other evidence in the record . . . ." The ALJ concluded that Plaintiff had the RFC to perform a range of work at the light exertional level with limitations.

The ALJ decided that, as far as limitations, Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently. He could sit, stand, or walk about six hours each in an eight-hour workday. He could occasionally push and pull with the bilateral upper and lower extremities. He could frequently climb ramps or stairs but never ladders, ropes, or scaffolds. He could frequently stoop, kneel, crouch, or crawl. He could frequently reach overhead with his bilateral upper extremities. He

should avoid concentrated exposure to extremes of cold or heat, to wetness, to humidity, to vibration, to fumes, odors, dust, gases, or poor ventilation, and to work at unprotected heights, around dangerous moving machinery, or the operation of a motor vehicle as part of the job duties. Based on the testimony of a vocational expert, the ALJ determined that Plaintiff was not disabled because he was able to do his past relevant work as a parts salesperson, file clerk, and sales clerk as those jobs are generally performed in the national economy.

As a result, the ALJ ruled that Plaintiff was not disabled and did not qualify for benefits.

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The Court finds that the ALJ's summary of the record in his decision, when compared with the issues raised by Plaintiff, is sufficiently comprehensive. The Court will, however, note some key findings.

## I.    Agency Forms

Plaintiff was born in 1958, was 56 years old on the alleged onset date, and has a high school education (Tr. 229, 235). Plaintiff submitted a function report in February 2017 stating that he had diabetes, neuropathy, pain, tremors, poor memory retention, and sensitivity to sun exposure (Doc. 254). He also claimed that he could not stand up or walk along with having difficulty lifting more than ten pounds (*Id.*). He did acknowledge that he lived independently, walked his dog, prepared his own meals, cleaned, mowed other lawns for money in addition to his own lawn, washed clothes, shopped for groceries, frequently had dinner with his

mother, and frequently went to a bar with friends (Tr. 254-228).

## II.    Evidentiary Hearing

Plaintiff expanded on his job mowing lawns, stating that he mows lawns for a utility company during the summer using an air-conditioned tractor (Tr. 40, 49-50, 55-6). Regarding other jobs, he said "[e]very now and then I'll do a, turn an odd job like help somebody paint a porch or clean the gas tank on an old chainsaw, something like that . . ." (Tr. 52). Plaintiff claimed that he could stand for no more than a half hour and sit for one hour; could walk half a block; and suffered from constant leg pain and numbness (Tr. 40-42).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment (Tr. 68). The VE testified that this person could perform Plaintiff's past relevant work, but noted that if the person was off task for greater than ten percent of the workday, he would be precluded from competitive employment (Tr. 69).

## III.    Medical Records

In April 2015. Plaintiff visited Dr. Gemo Wong, a family medicine doctor, who noted his diagnosis with diabetes (Tr. 560). Plaintiff complained of a burning sensation in his feet (*Id.*). Wong observed good pedal pulses in his feet and diffuse wheezing in his lungs (Tr. 563). Wong diagnosed Plaintiff with polyneuropathy and prescribed him gabapentin (Tr. 563-4).

A September 2015 x-ray of Plaintiff's chest indicated mildly hyperexpanded lungs with flattening of the diaphragm (Tr. 399).

In November 2016, Plaintiff saw Dr. David Lee, a neurologist, at the request

of Wong (Tr. 450). Lee's systemic review noted that Plaintiff was remarkable for diabetes (three years), hypertension, brainstem stroke (10 years ago), chronic neck and lower back pain, diabetic neuropathy, bladder cancer (resected 2015), obstructive sleep apnea, exogenous obesity, and left facial pain (*Id.*). Lee examined Plaintiff and observed that he was awake, alert, and oriented with grossly intact memory, normal speech, and average knowledge of general information within the relevant period (Tr. 451). Lee noted absent pinprick sensation on both feet that extended to the infrapatellar level (*Id.*). He also had normal muscle bulk, tone, and power in all four limbs along with mild-to-moderate impairment of temperature and vibratory sensation over the lower limbs (*Id.*). Dr. Lee assessed the Plaintiff with left-sided trigeminal neuralgia, distal symmetric sensory neuropathy involving the lower limbs due to diabetes, obstructive sleep apnea, and a history of probable brain stem stroke (*Id.*). Lee prescribed a trial of Tegretol to Plaintiff.

In June 2017, a requested x-ray of the cervical spine as part of a consultative examination revealed multilevel degenerative disc disease with anterior osteophyte formation (Tr. 655). Later that month, consultative examiner Dr. Adrien Feinerman noted that claimant reported experiencing neck pain and lower back pain, both due to degenerative disc disease (Tr. 646). Plaintiff reported that his pain radiated to his right upper extremity as well as to both lower extremities (*Id.*). He also reported experiencing TMJ pain and reported that he could walk for one block, stand for 15 minutes, sit, squat, bend, and do fine and gross manipulation (*Id.*). Plaintiff additionally relayed his history of diabetes, experiencing neuropathy, and sleep apnea, but denied shortness of breath, chest pain, or seizures (*Id.*).

Feinerman observed that Plaintiff had clear lungs, and he had no problems with getting on and off the exam table, tandem walking, standing on his toes, standing on his heels, squatting, or arising from a chair (Tr. 650). He noted that Plaintiff exhibited no anatomic abnormality of any extremity, no limitation of motion of any joint, strong and equal grip strength, no limitation of motion of any spinal segment, and normal ambulation without an assistive device (Tr. 651). In addition, his memory and concentration were normal (*Id.*). Feinerman assessed the claimant with hypertension, diabetes, degenerative disc disease, and urinary bladder cancer (*Id.*).

In July 2017, Wong referred Plaintiff for pulmonary function testing that showed moderate-severe obstructive defect with mild bronchodilator response and mild reduction in diffusion capacity (Tr. 668, 688). Wong wrote in his patient plan for Plaintiff to "STOP SMOKING" and he received a prescription for Chantix (Tr. 668, 695).

In August 2017, Wong examined Plaintiff and observed diffuse rhonchi respiratory sounds (Tr. 706). In October 2018, Wong examined Plaintiff and noted that he demonstrated faint pedal pulses (Tr. 738).

Wong submitted an assessment of Plaintiff's functional capacity. In it, Wong opined that Plaintiff could stand for thirty minutes at a time and could sit for one hour at a time (Tr. 807). He could stand for one hour and walk for one hour in an eight-hour day (*Id.*). He could sit for a total of three-to-four hours in an eight-hour day (*Id.*). He needed to lie down or recline for thirty minutes every twenty to thirty minutes (*Id.*). Plaintiff could occasionally stoop and operate foot controls and could

frequently reach above shoulder level (*Id.*). He could not push, pull, or perform fine manipulation with his upper extremities (Tr. 808). Wong asserted that Plaintiff would be absent from work at least three days each month due to his diabetes (Tr. 809).

## IV.   State Agency RFC Assessments

In July 2017, Dr. Julio Pardo, reviewed the evidence of record available at the time. He opined that Plaintiff could perform work at the medium exertional level with limitations to never climb ladders, ropes, or scaffolds and avoid concentrated exposure to extreme heat and cold, wetness, humidity, vibration, hazards, fumes, odors, dusts, gases, and poor ventilation (Tr. 80-81, 83).

In November 2017, Dr. Lenore Gonzalez assessed Plaintiff's RFC based on a review of the file materials and mostly agreed with Pardo's findings, determining that Plaintiff could perform work at the medium exertional level (Tr. 108-110, 112).

## ANALYSIS

## I.   Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ failed to identify the evidentiary basis that supported his assessment of Plaintiff's RFC. Specifically, Plaintiff claims that because the ALJ found that none of the available medical opinion evidence accurately accounted for the totality of Plaintiff's functional restrictions, the ALJ faced an evidentiary gap that he could not fill with lay speculation about how Plaintiff's medically determinable impairments limit his ability to perform work tasks (Doc. 28, p. 6). Plaintiff illustrates by pointing to the ALJ assessing limited weight to the state agency consultants' opinions and Wong's opinions, with the ALJ

finding that the Plaintiff was more limited than the opinions from the former suggested and less limited than the opinion from the latter suggested (Tr. 27).

In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). An ALJ who denies benefits must build an "accurate and logical bridge from the evidence to her conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). An ALJ is not allowed to play doctor or use lay opinions to fill evidentiary gaps that exist in the record. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).

Under some circumstances, an evidentiary deficit can occur if an ALJ rejects each record opinion indicating functional limitations. For example, in the case cited by Plaintiff, *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010), the ALJ discredited the RFC opinions of both the state agency physician and the claimant's treating physician. *Id.* at 688. As a result, the only other relevant medical opinion left to the ALJ in that case was from a third doctor, whom the ALJ did not discuss, and whose opinion did not include a functional assessment of the claimant's abilities. *Id.* at 690. The Seventh Circuit remanded the decision of the ALJ, holding that it was not the ALJ's evaluation of the claimant's treating physician that required remand, but rather "the evidentiary deficit left by the ALJ's rejection of his reports[.]" *Id.* at 689-90. According to the Court, "[t]he rest of the record simply [did] not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to 'stand or walk for six hours' in a typical work day." *Id.* at 690.

Here, there is no evidentiary deficit because, after giving little weight to the

opinions and giving his reasoning, the ALJ turned to some of the specific opinions of Feinerman and delineated his findings, which contrasted with the findings of Wong. Plaintiff states that "the ALJ proceeded to make a series of independent medical conclusions that were not supported by evidence," but points to nothing in the ALJ's opinion to back up this claim (Doc. 28, p. 7). Despite Plaintiff's assertion, it appears that the ALJ merely gave greater weight to another expert opinion. As the Seventh Circuit recently highlighted, "the Court's review is not whether there is conflicting evidence in the record, whether the ALJ's opinion is correct, or even if the Court would make the same RFC finding based on the administrative record; instead, the Court's review is limited to whether the ALJ adequately considered the evidence in the record and whether substantial evidence supports the ALJ's conclusion." The ALJ identified the evidentiary basis that supported his assessment of Plaintiff's RFC here.

## II.    Weighing of Opinion Evidence

Plaintiff argues that the ALJ erred in weighing the opinion of Wong. The ALJ stated that he gave little weight to Wong's assessment of Plaintiff's functional capacity because Wong's examination findings were routinely limited. The ALJ also noted that after Lee prescribed Tegretol to Plaintiff, the medical record does not show that he subsequently followed up with Lee or sought additional free or reduced cost treatment with a specialist for his severe impairments (Tr. 28). The ALJ further alleged that Plaintiff's examination findings were limited after he started treatment with Tegretol, and Feinerman's observations were contrary to Wong's observations (*Id.*).

The ALJ was not required to credit Wong's opinion even though he was a treating doctor; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford*, 227 F.3d at 870.

The ALJ is required to consider a number of factors in deciding how much weight to give to a treating doctor's opinion. The regulations refer to a treating healthcare provider as a "treating source." The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is

'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

Plaintiff argues that the ALJ incorrectly assessed Wong's opinion based on only one exam because the record demonstrates that Wong had a long-standing treatment relationship with Plaintiff.

While the record suggests that Wong was a treater and the ALJ acknowledged that Wong had a treating relationship with Plaintiff, Plaintiff's argument largely ignores the ALJ's reasoning for discounting Wong's opinion: Wong's findings on that exam were contradicted by some of the consultative medical examination findings of Feinerman, the lack of follow-up after treatment with Tegretol by Lee, and limited examination findings after treatment with Tegretol. The ALJ identified Feinerman's exam by exhibit and page number (Tr. 28).

In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ easily met the minimal articulation standard here.

## III.   Subjective Symptom Allegations

Plaintiff argues that the ALJ's RFC determination that incorporated his evaluation of his subjective symptom allegations improperly applied his activities of daily living against him and improperly discounted his symptoms because he continued to some and failed to follow his treatment plan.

The regulations provide factors for an ALJ to consider in determining the

extent to which a claimant's statements about the intensity and persistence of his symptoms limit his capacity for work. 20 C.F.R. § 404.1529(c). Those factors include objective medical evidence, information from a claimant's medical sources about her symptoms, a claimant's course of treatment, daily activities, and inconsistencies between a claimant's statements and other evidence. 20 C.F.R. § 404.1529(c)(2)-(4). The ALJ must carefully consider the entire case record and evaluate the intensity and persistence of an individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. SSR 16-3p. Though the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski*, 322 F.3d at 917 (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski*, 245 F.3d at 888).

The Seventh Circuit has cautioned against equating the ability to engage in limited daily activities with an ability to work. *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has called improper consideration of daily activities "a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore*, 743 F.3d at 1126. However, while it may be error to equate **limited** daily activities with the ability to work full-time, it is not error to consider daily activities; in fact, it is proper for an ALJ to consider a conflict between the plaintiff's claims about what he can do and the evidence as to his activities.  *See Pepper v. Colvin,* 712

F.3d 351, 369 (7th Cir. 2013).

Here, the ALJ recounted Plaintiff's account of his daily activities in manner sufficient to build a logical bridge to his conclusion that Plaintiff physically functions to a greater ability than he leads on. Specifically, the ALJ summarized Plaintiff's function reports in detail, including his chores and errands. Plaintiff lived independently, walked his dog, prepared his own meals, cleaned, mowed other lawns for money on an air-conditioned tractor in addition to his own lawn, washed clothes, shopped for groceries, did odd jobs, frequently had dinner with his mother, and frequently went to a bar with friends.

Plaintiff claims that the ALJ failed to explain how any of the activities of daily living he listed contradicted Plaintiff's subjective symptom allegations. The ALJ's opinion shows otherwise. The ALJ reasoned that Plaintiff's activities of daily living did not seem to be consistent with his allegations of disabling symptoms and limitations (Tr. 26). He also specifically stated that "[e]ven though the claimant testified his job mowing grass is part-time and within an air-conditioned cab, this does not support allegations of disabling neuropathy in his feet or disabling respiratory disease," highlighting to the tractor's clutch and the time spent doing the activity despite his respiratory-related claims.

In the same vein, the ALJ did no err in taking account of Plaintiff's failure to follow his treatment plan, including smoking cessation ordered by his treating physician, in supporting adverse credibility findings. "In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or

infrequency of treatment." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008).

The ALJ properly considered Plaintiff's subjective symptom allegations here.

### CONCLUSION

After careful review of the record, the Court is convinced that the ALJ committed no reversible errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED:  February 18, 2022**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**